| | |
|---|---|
| | |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 11-02782-TUC-CKJ (JCG) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Kaleena Leah Morales, et al., | ) | |
| Defendants. | ) | |
| | ) | |

On August 26, 2011, Defendant Kaleena Leah Morales filed a Motion to Suppress. (Doc. 44.) The government filed a Response and Defendant timely replied. (Docs. 58, 60.) Defendant Sharae Danielle Jakaub has filed unopposed Motions for Joinder in Defendant Morales' Motion to Suppress and Reply. (Docs. 53, 61.) This matter came before the Court for a hearing and a report and recommendation as a result of a referral on July 20, 2011, pursuant to LRCrim 5.1.

This matter was set for evidentiary hearing and evidence was heard on September 8, 2011. Defendant Morales, who remains in custody at this time, was present and represented by counsel. Co-defendant Jakaub, who remains in custody at this time, was also present and represented by counsel. This matter was submitted following oral argument at the conclusion of the hearing and taken under advisement.

1  Having now considered the matter, the Magistrate Judge recommends that the District
2  Court, after its independent review: (1) grant Defendant Jakaub's Motions for Joinder and
3  (2) deny Defendant Morales' Motion to Suppress.

## FACTUAL FINDINGS

Arizona Department of Public Safety (ADPS) Officer Steve Kroeger testified on behalf of the government. Officer Kroeger has served as an ADPS officer for over nine years and his primary duty is to enforce traffic and criminal laws. At approximately 12:30 p.m. on July 17, 2011, Officer Kroeger was patrolling the three lanes of westbound traffic on I-10 near Cortaro Road in a marked ADPS vehicle when he observed a black pickup truck driving in the far-left lane at a speed that appeared to be less than the 65 mile-per-hour speed limit. Officer Kroeger noticed that other cars were slowing behind the black pickup and passing it in the center lane.

At or near milepost 246 of I-10, the speed limit increases to 75 miles per hour. At approximately that milepost, Officer Kroeger began "pacing" the truck as he drove in the right hand lane approximately 50 feet back from the truck's position.[1] According to Officer Kroeger, the truck traveled at a speed between 60-65 miles per hour for approximately one mile while remaining in the far left lane.[2] Officer Kroger testified that although he often only paces a vehicle for two to three-tenths of a mile, he paced the truck for a full mile in order to give it plenty of opportunity to move into the right-hand lane. Vehicles continued to pass the truck on the right and Officer Kroeger recalls approximately two cars slowing behind the truck. From the point where the speed limit changed from 65 to 75 miles per hour, Officer Kroeger had paced the truck for approximately one mile. He then moved into the center lane

---

[1] Officer Kroeger defined "pacing" as driving approximately parallel to a vehicle in order to determine the speed at which the vehicle is traveling. He further testified that he has paced thousands of vehicles in the nine-plus years that he has served as a police officer and that the speedometer of his vehicle is accurate.

[2] Officer Kroeger testified that there are two signs before milepost 246 which warn drivers to drive right. According to Officer Kroeger, big white ADOT signs at mileposts 252 and 250 direct slower traffic to stay or move right.

- 2 -

and towards the truck. While he was next to the truck and slightly behind the truck, Officer Kroeger also noticed that there was a crack on the passenger side of the front windshield.

Officer Kroeger determined that the driver of the vehicle was in violation of A.R.S. § 28- 721(B), which requires vehicles traveling at less than normal speed to move to the right-hand lane, as well as A.R.S. § 28-957.01, which requires vehicles to be equipped with an adequate windshield. Officer Kroeger moved his vehicle into the left lane, behind the truck. After he moved behind the truck, the truck started on its own to move to the right and as soon as traffic cleared, Officer Kroeger activated his overhead lights and initiated a stop.

The truck pulled over onto the east side of I-10 and Officer Kroeger approached the truck on the passenger side. He noticed that the truck had significant body damage throughout. As he looked through the passenger window, he saw a driver whom he identified in court as Defendant Morales and a front passenger whom he identified in court as Defendant Jakaub. He also observed five people attempting to hide in the back seat. They were not sitting on a seat, but rather laying down in a horizontal position. At that point, Officer Kroeger suspected that the truck was involved in illegal human smuggling. He asked Defendant Morales to give him the keys to the car and he contacted dispatch to request assistance from Border Patrol.

At some point following the stop, Defendant Morales told Officer Kroeger that she thought the speed limit was still 65 miles per hour west of milepost 246. Officer Kroeger asked the Defendants for their driver's licenses. Defendant Jakaub provided a driver's license. When Defendant Morales stated that she didn't have her driver's license with her, Officer Kroeger asked her to step out of the car. Based on identifying information provided by Defendant Morales, Officer Kroeger determined that Defendant Morales' driver's license had been suspended. Officer Kroeger cited Defendant Morales for driving with a suspended license. He did not cite her for violations of A.R.S. § 28- 721(B) or A.R.S. § 28-957.01; he testified that it was his practice to give warnings for violations of A.R.S. § 28- 721(B) and that he could not cite Defendant for violation of A.R.S. § 28-957.01 because he had

discovered that the truck was registered to a rental car company. Officer Kroeger testified that driving with a suspended license is a criminal violation.

Officer Kroeger did not question any of the people in the backseat, although he did advise them that some of them should move into the front seat so that they could all wait comfortably inside the vehicle. Border Patrol arrived at approximately 1:15 p.m.

Charles Taylor, a private investigator, testified on behalf of Defendants. Mr. Taylor offered testimony regarding his observations of westbound I-10 near Cortaro Road and milepost 246. Mr. Taylor also testified regarding his 25 years of employment with the Tucson Police Department and his experience with pacing vehicles to determine their speed. Mr. Taylor agreed that pacing is an established technique for determining speed and that one mile is a pretty good distance for pacing.

Defendant Jakaub testified that on July 17, 2011, she was traveling in the front passenger seat of the truck driven by Defendant Morales. Defendant Jakaub testified that Defendant Morales was driving in the far left lane but was not impeding traffic. According to Defendant Jakaub, the truck was moving with traffic, and sometimes a car would get in front of it, and sometimes the truck would get in front of other cars. She acknowledged that the traffic was fairly busy and there were cars in all lanes. Defendant Jakaub also testified that the truck's front windshield did not have a crack. Defendant Jakaub noticed when the speed limit changed from 65 miles per hour to 75 miles per hour and shared that information with Defendant Morales. Defendant Jakaub testified that she saw Officer Kroeger driving in the far right lane behind the truck around the time the speed limit increased to 75 miles per hour and that she advised Defendant Morales that a police officer was behind the truck. She admitted that the truck was traveling in the left lane from the time she first saw the police vehicle until the time that he activated his lights.

Defendant Morales testified that on July 17, 2011 she was driving the truck that was eventually stopped by Officer Kroeger. The truck was a rental vehicle; the person who had rented the car had given Defendant Morales permission to drive it. According to Defendant Morales, the truck's front windshield was not cracked. When Defendant Jakaub told

Defendant Morales that a police officer was driving behind them, Defendant Morales got nervous and slowed down. Defendant Morales was transporting five Hispanic males in the backseat of the truck. Defendant Morales testified that the truck was moving with the flow of traffic, that some vehicles may have passed the truck but that the truck also passed other vehicles. Defendant Morales denied impeding traffic.

## ANALYSIS

Defendant moves to suppress the evidence on the ground that Officer Kroeger's traffic stop was unconstitutional. Defendant also argued for the first time in her Reply that the evidence should be suppressed because Officer Kroeger's search of the vehicle exceeded constitutional limits.

**1.    Reasonable Suspicion for the Stop**

The Fourth Amendment's prohibition against unreasonable searches and seizures applies to investigatory traffic stops. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). To justify an investigative stop, a police officer must have reasonable suspicion that a suspect is involved in criminal activity.[3] *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000). Reasonable suspicion is formed by "specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *Lopez-Soto*, 205 F.3d at 1105 (internal quotation marks and citations omitted). An officer's inferences must "be grounded in objective facts and be capable of rational explanation." *Id.* (internal quotation marks and citations omitted). The Court must consider the "totality of the circumstances" to see whether the officer had a "particularized and objective basis" for suspecting criminal activity. *Arvizu*, 534 U.S. at 273 (internal quotation marks and citations omitted); *see also United States v.*

---

[3] Defendant contends that, pursuant to *Whren v. United States*, 517 U.S. 806 (1996), an officer must have probable cause, not reasonable suspicion, to support a traffic stop. Contrary to Defendant's assertions, *Whren* does not alter the minimum threshold for constitutionally permissible police action in making a traffic stop. *See United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000).

1  *Diaz-Juarez*, 299 F.3d 1138, 1141-42 (9th Cir. 2002). Officers are encouraged to draw upon
2  their own specialized training and experience in assessing the "totality of the circumstances."
3  *Arvizu*, 534 U.S. at 273-74.

4  In the present case, Officer Kroeger credibly testified that he stopped the Defendants'
5  truck because he believed that Defendant had violated two traffic laws. First, Officer
6  Kroeger believed that Defendant Morales had violated A.R.S. § 28-721(B), which states:

> On all roadways, a person driving a vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall drive the vehicle in the right-hand lane then available for traffic or as close as practicable to the right-hand curb or edge of the roadway, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway.

It is undisputed that Defendant Morales was driving in the far left lane at the time she was paced and stopped by Officer Kroeger. There is also substantial evidence demonstrating that Defendant was driving less than the posted speed limit of 75 miles per hour. According to Officer Kroeger, Defendant Morales was driving 60 to 65 miles per hour. Vehicles were slowing down behind Defendant's vehicle and passing Defendant on the right. Officer Kroeger's testimony demonstrated that his decision to stop the Defendants' truck was grounded in specific, objective observations which support a reasonable inference that the truck was being driven in violation of Arizona traffic law.

Although both Defendants claimed that the truck was moving with, not obstructing, traffic, portions of Defendants' testimony corroborated Officer Kroeger's testimony: Defendant Jakaub admitted that some cars passed the truck while it was driving in the left lane near milepost 246. Defendant Morales admitted that she slowed down when she realized Officer Kroeger was behind her. Based on the totality of the circumstances, the Magistrate concludes that Officer Kroeger had particularized and objective basis from which to conclude that Defendant Morales was traveling at less than normal speed in the far left lane of I-10 in violation of A.R.S. § 28- 721(B). *See United States v. Torres*, 119 Fed.Appx. 874, 876 (9th Cir. 2004) (holding that officer had reasonable suspicion to justify investigative stop where officer testified that he observed the defendant's vehicle following behind another

car at a distance of five to fifteen feet, at the speed of fifty-five miles per hour, and that based on his experience, this distance was too close for safety and was a violation of A.R.S. § 28-730(A) because the defendant's vehicle would not have enough time to stop without hitting the other vehicle or running off the roadway).

Defendants also contend that because A.R.S. § 28-721(B) does not define "normal speed of traffic," no probable cause can exist and no violation can occur. The statute, however, does specify the speed which would violate the statute. The statute states that normal speed is determined in reference to "the time and place and under the conditions then existing." Thus, Officer Kroeger's observation that Defendant Morales was driving 60-65 in a 75 mph zone in the left lane while cars passed around her and slowed behind her provided reasonable suspicion that a violation of A.R.S. § 28-712(B) was occurring.[4]

Second, Officer Kroeger credibly testified that he suspected that Defendant Morales was in violation of A.R.S. § 28-957.01, which states that passenger vehicles "shall be equipped with an adequate windshield." Officer Kroeger testified that when he pulled up to the side and behind the truck, he observed a crack in the front windshield. When he stopped the truck, his initial observations were confirmed: he observed a crack across the windshield consistent with significant damage to the body of the truck. His testimony was also supported by photographs of the truck, which documented a large spider web-like crack on the passenger side of the front windshield. Although Defendants denied that the truck had a cracked windshield at the time of the traffic stop, the Magistrate finds that testimony less credible than the testimony of Officer Kroeger and concludes that Officer Kroeger had reasonable suspicion to stop Defendants for violation of A.R.S. § 28-957.01. *See State v.*

---

[4]Defendant Jakaub also argued that Officer Kroeger's pace was improper because he paced the truck where the speed limit was changing and he was gaining on the vehicle. These arguments lack evidentiary foundation. Both Officer Kroeger and the Defendants' investigator, Charles Taylor, testified that a pace could be accurate if it was started in an area with one speed limit and completed in an area with an increased speed limit. And although testimony established that a pace is invalid if the pace vehicle gains on the vehicle being paced, Officer Kroeger testified that at the time he was pulling up to or gaining on the truck, he had completed his pace.

*Vera,* 196 Ariz. 342, 996 P.2d 1246 (App. 2000) (officer may stop vehicle with cracked windshield to determine adequacy of windshield under A.R.S. § 29-957.01(A)).[5]

Finally, Defendant Morales sought to admit into evidence the transcripts of the material witness depositions, contending that defense counsel asked two of the material witnesses specific questions about the crack in the truck's front window and whether the truck was impeding the flow of traffic. According to Defendant Morales, the material witnesses testified that they did not see a crack in the window and that they did not see the traffic impeded. The government objected to the admission of the material witness depositions and stated that the material witnesses generally testified that they didn't see much and didn't notice much. (TR 64-65). Defendant did not provide the material witness deposition transcripts to the Magistrate before this Report and Recommendation was issued.[6] Nevertheless, the proffered testimony would not change the analysis herein. Even if the material witnesses testified that they did not see Defendant Morales impeding traffic, that testimony is not relevant to the question of whether Defendant Morales was driving at less than normal speed in the lefthand lane. Impeding traffic is not an element of the traffic offense. Furthermore, even if the material witnesses did not see a crack in the truck's

---

[5]Defendants argue: (1) there was no crack in the window; (2) if there was a crack, it wasn't as extensive as Officer Kroeger testified; and (3) if there was a crack, Officer Kroeger couldn't see it before the traffic stop. These contradictory arguments undermine their persuasiveness and the evidence does not support them. Although Defendants challenged the admissibility of the photos of the extensive crack on the grounds that the photos were taken at a later date by someone other than Officer Kroeger, Officer Kroeger credibly testified that the photos were an accurate depiction of the windshield on July 17, 2011. Moreover, his report, which predated the photographs, indicates that he observed a "horizontal crack in the windshield that looked as if it could cause visual distortions to the driver's field of vision" as an additional basis for the stop. Notably, after stopping the truck, Officer Kroeger also observed that the truck had extensive body damage throughout. In other words, the cracked windshield was consistent with the overall condition of the truck. On cross-examination, Defendant Morales challenged Officer Kroeger as to whether the body damage was present and documented at the time of the stop. Officer Kroeger produced his vehicle removal sheet, showing that the damage existed and was documented at the scene. Officer Kroeger credibly testified that he saw the crack as he pulled next to the vehicle and slightly behind it.

[6]With the Court's permission, Defendant Morales filed Proffer of Evidence which restated Defendant's contention as to the material witnesses' testimony. (Doc. 76.)

windshield, that testimony would not change the Court's conclusion: regardless of whether Officer Kroeger had a reasonable suspicion that Defendant Morales was in violation of A.R.S. § 28-957.01, the evidence firmly demonstrates that Officer Kroeger's decision to stop Defendant Morales for violation of A.R.S. § 28- 721(B) was constitutional.

**2.    Scope of the Search**

Defendant argues for the first time in her Reply, which she captions as an "Amended Motion to Suppress," that the government wrongfully expanded its search and seizure in this case. Specifically, Defendant alleges that Officer Kroeger made inquiries into the identity and nationality of the occupants in the backseat of the truck, and that the questioning constituted an unconstitutional search unrelated to the traffic stop. Assuming for the sake of the pending Motion that such an argument passes legal muster, it is without factual support. The passengers in the vehicle were in plain view when Officer Kroeger approached the truck. Officer Kroeger repeatedly testified that he did not ask the occupants of the truck any questions. He spoke to them only to advise them to move from a "tangled up" position in the back seat to more comfortable seats in the front. Defendants failed to present any evidence in support of their claim that Officer Kroeger made inquiries into the occupants' nationality.

At the close of the hearing, Defendant Jakaub argued that Officer Kroeger exceeded the scope of the traffic stop by requiring her to remain on the scene. However, by that time, Officer Kroeger has reasonable suspicion that the Defendants were involved in human smuggling. Officer Kroeger's further limited detention of Defendant Jakaub to investigate the discovery of this criminal activity was thus permissible.

## RECOMMENDATION

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court GRANT Defendant Jakaub's unopposed Motions for Joinder in Defendant Morales' Motion to Suppress and Reply (Docs. 53, 61) and DENY Defendant Morales' Motion to Suppress (Doc. 44).

The parties have fourteen (14) days to serve and file written objections to the Report and Recommendation. The parties are advised that any objections should be filed with the following caption: **CR-11-2782-TUC-CKJ.**

DATED this 4th day of October, 2011.

Jennifer C. Guerin
United States Magistrate Judge