**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KALEENA LEAH MORALES and<br>SHARAE DANIELLE JAKAUB,<br><br>Defendants. | CR-11-02782-TUC-CKJ (JCG)<br><br>**ORDER** |

On October 4, 2011, Magistrate Judge Jennifer C. Guerin issued a Report and Recommendation on Defendant Kaleena Leah Morales's Motion to Suppress [Doc. 44]. Magistrate Judge Guerin recommended that Defendant Morales's Motion to Suppress [Doc. 17] be denied.[1]  On October 12, 2011, Defendant Morales filed her Motion to Reconsider/Objection to Report and Recommendation [Doc. 82]. On October 18, 2011, Defendant Jakaub filed her Motion to Join in Motion to Reconsider and Objection to Report and Recommendation [Doc. 84]. On October 20, 2011, the Government filed its Response to Defendant's Motion to Reconsider/Objection to Magistrate's Report and Recommendations [Doc. 85]. Upon independent review and for the reasons delineated herein, the Report and Recommendation is adopted.

---

[1] The magistrate judge also granted Defendant Sharae Danielle Jakaub's Motion for Joinder in Motion to Suppress [Doc. 53] and Motion to Join in Reply / Amended Motion to Suppress [Doc. 61].

**I. STANDARD OF REVIEW**

The Court reviews de novo the objected-to portions of the Report and Recommendation ("R & R"). 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *See also, Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

**II. FACTUAL BACKGROUND**

The stop in this case occurred on July 17, 2011. Indictment [Doc. 22] at 1. Arizona Department of Public Safety ("AZDPS") Officer Steve Kroeger made the initial traffic stop of Defendants on that date. H'rg Tr. 9/8/2011 [Doc. 74] at 19:18-20:9. Officer Kroeger has been an AZDPS officer for nine and a half years. *Id.* at 5:10-4. His main duty with AZDPS is the enforcement of traffic and criminal laws. *Id.* at 5:21-3. On July 17, 2011, Officer Kroeger was in a marked AZDPS vehicle patrolling "in the area of westbound I-10 from Cortaro Road – from Ina Road, Cortaro Road, and going further west in Pima County." *Id.* at 7:19-24. At approximately 12:30 p.m., Officer Kroeger "had just gone over the top of Cortaro Road when [he] saw a vehicle ahead of [him] in the left lane." *Id.* at 8:5-10. Officer Kroeger observed "a black pickup truck in the left-hand lane traveling westbound. It appeared to be driving slower than – at that point even driving slower than the normal traffic rate." Hr'g Tr. 9/8/2011 [Doc. 74] at 9:7-12. There were "two cars behind it – in close proximity behind it and at least two others passing it and from the center lane." *Id.* at 9:18-21. Officer Kroeger testified that in the area of milepost 252 and again at approximately milepost 250 there are Arizona Department of Transportation signs admonishing slower traffic to move right. *Id.* at 8:16-9:1.

Beginning at milepost 246, just west of Cortaro Road, Officer Kroeger began to pace the black pickup. *Id.* at 11:24-12:8. "Pacing is a method of determining another vehicle's speed by using your own . . . speedometer." *Id.* at 6:2-10. When pacing another vehicle one "would attempt to match its speed" so that the other vehicle is neither pulling away or

1  coming closer. *Id.* Officer Kroeger has used this method thousands of times in the nine and
2  one half years that he has worked with AZDPS. *Id.* at 11-19. Moreover, Officer Kroeger
3  confirmed the accuracy of his speedometer prior to the July 17, 2011 stop. Hr'g Tr. 9/8/2011
4  [Doc. 74] at 6:20-7:11. Officer Kroeger testified that he paced the black pickup for one mile
5  to milepost 245. *Id.* at 12:5-6. During that time, "[t]he vehicle stayed in the left-hand lane
6  the whole time and then there continued to be cars that went around it from the center lane."
7  *Id*. 12:6-8. The black pickup was traveling "at 60 to 65 miles per hour" during this one mile
8  stretch. *Id.* at 12:3-4. The speed limit increased from 65 to 75 miles per hour just west of
9  Cortaro Road. *Id.* at 11:15-21. Although Officer Kroeger often paces vehicles for two or
10 three-tenths of a mile, in this case he paced the black pickup for one mile to give it an
11 opportunity to move to the right. Hr'g Tr. 9/8/2011 [Doc. 74] 12:18-24; 92:4-11.

12 After pacing the black pickup, Officer Kroeger testified that he "began to move to the
13 left – again, I was in the right-hand lane, which is the number 3 lane. I began to move to the
14 left and as soon as I moved behind the vehicle, it started on its own to move over to the right
15 and as soon as traffic cleared, I initiated my lights." *Id.* at 17:11-18. AZDPS uses numbers
16 to designate lanes of traffic, and as such the lane furthest to the right was the number 3 lane,
17 the center lane number two, and the far left lane the number 1 lane. *Id.* at 18:9-14. The
18 number 1 lane is also known as the fast lane.[2] *Id.* at 18:17-21. Officer Kroeger also testified
19 that while pacing the vehicle he noticed a "pretty significant crack on the passenger – right-
20 hand side to the windshield . . . a very significant crack . . . really shattered." *Id.* at 13:18-25.
21 When presented with a photograph of the black pickup and its cracked windshield, Officer
22 Kroeger averred that "[a]fter I stopped the vehicle, this is an accurate picture of how I saw

---

[2] Defendants vociferously argue that there is no fast lane. *See* Def. Morales's Obj. to R & R [Doc. 82] at 6. Contrary to Defendants' contentions, the Oxford English Dictionary defines "fast lane" as "a traffic lane, usually that farthest from the outer edge of a motorway or dual carriage way intended for drivers who wish to overtake slower cars." The Oxford English Dictionary, http://www.oed.com/view/Entry/68420?redirectedFrom=fast%20lane#eid4802036 (last visited November 14, 2011). This definition is consistent with Officer Kroeger's description of the number 1 lane.

it, yes." Hr'g Tr. 9/8/2011 14:11-14; Govt.'s Exh. "4." Defendants object to the magistrate judge's recitation of the facts on this point, arguing that Officer Kroeger's testimony regarding Government's Exhibit 4, means that Officer Kroeger could not have seen the crack until after he stopped the vehicle.³ *Id.* at 14:16-22; Def. Morales's Obj. to R & R [Doc. 82] at 2-3. This contention is without merit. Government's Exhibit 4 is a photograph of the vehicle taken from the outside of the driver's side of the vehicle looking inward. Officer Kroeger clearly testified that he first saw the crack in the windshield while pacing the black pickup. *Id.* at 13:18-25. Therefore, Officer Kroeger would not have seen the windshield damage from the angle depicted in Government's Exhibit 4 while driving in his patrol car.

Defendants further assert that Officer Kroeger's sworn testimony is contradictory based upon the following exchange during cross-examination:

> Q    And I'm just wondering how you could see the front windshield from behind the vehicle?
>
> A    Well, some of the time I'm – some of the time I was next to the vehicle and then slightly behind it, which I have a very clear view when I'm slightly behind it and if I look to my left, I can see that damage to the windshield.

Hr'g Tr. 9/8/2011 [Doc. 74] at 41:17-22. Defendant Morales argues that Officer Kroeger did not testify that he ever "looked" to the left. Again, this is without merit. As noted previously, Officer Kroeger clearly testified that he saw the crack while pacing the vehicle. Furthermore, the majority of Officer Kroeger's response to defense counsel's question was in the present rather than past tense. The Court does not find the mixed verb tenses in Officer Kroeger's response supportive of a determination of inconsistent testimony.

Defendants also object because the front windshield was "fully functional." Def. Morales's Obj. to R & R [Doc. 82] at 4. Officer Kroeger testified that the windshield fully covered the front of the vehicle and that you could look out of the windshield. Hr'g Tr. 9/8/2011 41:2-10. Officer Kroeger also testified that "having damage to the windshield in

---

³Defendant Jakaub has filed her Motion to Join in Motion to Reconsider and Objection to Report and Recommendation [Doc. 84]. As such, the Court will consider all objections contained within Defendant Morales's Objection to R & R [Doc. 82] to be made by both Defendants.

- 4 -

1 this fashion compromises the integrity of the windshield." *Id.* at 89:4-7. Officer Kroeger did not testify that the front windshield was "fully functional," rather this is a legal conclusion drawn by Defendant Morales. Indeed, Officer Kroeger clearly and consistently testified that in his opinion the windshield was not adequate in violation of A.R.S. § 28-957.01.

Upon determining that the driver was in violation of Section 28-721(B), Arizona Revised Statutes, which requires slower traffic to move right, as well as Section 28-957.01, A.R.S., requiring vehicles to be equipped with an adequate windshield, Officer Kroeger moved his vehicle toward the left lane. Hr'g Tr. 9/8/2011 [Doc. 74] 17:11-18. As soon as Officer Kroeger was behind the vehicle, it began to move to the right, and as soon as traffic cleared, he initiated his lights and effectuated a stop. *Id.* Defendants object to the magistrate judge's factual recitation because Defendants assert that Officer Kroeger's statement that the black pickup's movement to the right before he activated his lights demonstrates inconsistency. Def. Morales's Obj. to R & R [Doc. 82] at 4. Officer Kroeger, however, testified that he paced the black pickup for a full mile to give it a chance to move over. Hr'g Tr. 9/8/2011 [Doc. 74] 12:18-24; 92:4-11. Only after his pace was complete, and the black pickup remained in the number 1 lane, did Officer Kroeger begin to move his vehicle behind the pickup. It was at this point, after Officer Kroeger began to position his vehicle to initiate a stop, that the black pickup began to move right.

The truck pulled over on the east side of I-10, and Officer Kroeger approached it from the right-hand side. *Id.* at 18:22-19:9. Through the open window he looked at the driver and scanned the vehicle for safety reasons. *Id.* Officer Kroeger's attention was drawn to the back seat where he saw a number of people laying down horizontally attempting to hide. *Id.* Officer Kroeger immediately asked the driver, identified as Defendant Morales, to give him the keys to the vehicle. Hr'g Tr. 9/8/2011 [Doc. 74] 19:22-20:18. Officer Kroeger believed that the crime of human smuggling was being committed and he did not want Defendant Morales to drive off. *Id.* at 20:19-22. Based on his observations, Officer Kroeger requested his dispatcher to contact Border Patrol. *Id.* at 21:2-5.

1     Officer Kroeger explained to Defendant Morales the reason for the stop, and she stated that she thought the speed limit was still 65 miles per hour. *Id.* at 54:2-4. Officer Kroeger asked Defendant Morales for her driver's license, and she responded that she did not have it or had forgotten it. *Id.* at 21:9-18. Officer Kroeger then asked Defendant Morales how many people were in the back of her vehicle, and she did not respond. *Id.* He then took Defendant Morales out of the vehicle and ran a Motor Vehicle Department check on her based on identifying information provided by her, the result of which indicated that her license had been suspended. Hr'g Tr. 9/8/2011 [Doc. 74] 21:9-22:1. Additionally, Officer Kroeger obtained a valid driver's license from Defendant Jakaub.

    Officer Kroeger ultimately cited Defendant Morales for driving on a suspended license. *Id.* at 21:25-22:3. He did not cite her for either the A.R.S. § 28-721(B) violation or the cracked windshield in violation of A.R.S. § 28-957.01. *Id.* at 22:4-15. Officer Kroeger testified that he has discretion regarding whether or not to give a ticket, and he determined that a citation for the windshield was unreasonable because the vehicle was registered to a rental agency. *Id.* at 22:4-20. Moreover, it is his practice to give warnings regarding the hazardous moving violation, explain the law and why it is important for slower vehicles to keep to the right. *Id.* Finally, Officer Kroeger testified that driving on a suspended license is a criminal violation. *Id.* at 22:21-4.

    Officer Kroeger did not question any of the individuals in the back seat. Hr'g Tr. 9/8/2011 [Doc. 74] 20:23-21:1. He spoke to them "only to have them rearrange their positions in the vehicle so that they weren't on top of each other. *Id.* at 50:11-16.

    Charles Taylor testified on behalf of the defense. *See* Hr'g Tr. 9/8/2011 [Doc. 74] 56. Mr. Taylor is a private investigator, retired from the Tucson Police Department. *Id.* at 56:20-57:1. Mr. Taylor testified regarding his observations of the area between Cortaro Road and Twin Peaks Road. *Id.* at 57:6-59:20. Mr. Taylor also testified regarding how to do a pace. *Id.* at 60:9-20. Mr. Taylor averred that it was acceptable to start a pace in an area where the speed limit changes. *Id.* at 61:5-7. Mr. Taylor also testified that a mile was a good distance for a pace. *Id.* at 63:6-10.

Defendant Jakaub testified that she was in the front passenger seat of the black pickup on July 17, 2011. Hr'g Tr. 9/8/2011 [Doc. 74] 65:14-16; 70:2-4. Defendant Jakaub testified that she saw the speed limit sign near Cortaro and they were pulled over after the Twin Peaks Bridge. *Id.* 66:24-67:18. Defendant Jakaub testified that they were traveling in the left hand lane. *Id.* at 72:14-17. She also testified that the black pickup was not impeding traffic, but was in the normal flow of traffic. *Id.* at 69:20-70:1. Defendant Jakaub said that it was a fairly busy Sunday afternoon. *Id.* at 69:16-19. Defendant Jakaub told Defendant Morales about the speed limit change to 75 miles per hour. Hr'g Tr. 9/8/2011 [Doc. 74] 72:14-22. Defendant Jakaub did not recall there being a crack in the windshield. *Id.* at 70:22-3. Defendant Jakaub testified that she first saw the police officer around the change in speed limit. *Id.* at 68:5-10.

Defendant Morales testified that she was in the pickup truck on July 17, 2011. Hr'g Tr. 9/8/2011 [Doc. 74] 75:3-5. The pickup was a rental vehicle. *Id.* at 75:6-7. Defendant Morales did not recall a crack in the windshield. *Id.* at 75:16-18. When Defendant Jakaub told Defendant Morales that a police officer was approaching the vehicle, Defendant Morales got nervous and slowed down. *Id.* at 75:22-76:10. Defendant Morales was transporting five (5) Hispanic males in the back seat of the vehicle. *Id.* at 76:11-77:1. Defendant Morales testified that she was not impeding traffic on July 17, 2011. Hr'g Tr. 9/8/2011 [Doc. 74] 79:20-4. Defendant Morales testified that while some vehicles passed the black pickup, the pickup passed other vehicles, and was traveling with the normal flow of traffic. *Id.* at 79:4-24.

### III. ANALYSIS

Defendants object to the Magistrate Judge's R & R on several grounds. First, they asserts that the magistrate judge's reliance on *United States v. Lopez-Soto*, 205 F.3d 1101 (9th Cir. 2000) regarding the reasonable suspicion required of police officers is an attempt to overrule *Whren v. United States*, 517 U.2. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Def. Morales's Obj. to Magistrate's R & R [Doc. 82] at 5. Second, Defendants assert that

"[t]he Magistrate's conclusion based upon the totality of circumstances that officer Kroger [sic] had particularized and an objective basis from which to conclude that Defendant Morales was traveling at less than normal speed in the far left lane of I-10 in violation of A.R.S. § 28-721(b) [sic] is not supported by the record." *Id.* at 7. Lastly, Defendants aver that "[t]he magistrate fail[ed] to recognize that officer Kroger [sic] first stated that the pictures showed the crack <u>as he saw it after the stop</u>." *Id.* (emphasis in original). As such, Defendants urge that the evidence must be suppressed because "[t]he stop in this case is clearly pretextual." *Id.* at 8.

### A. *Standard for Traffic Stops*

Defendants assert that Magistrate Judge Guerin applied the incorrect legal standard required of officers to support a traffic stop. Def. Morales's Obj. to R & R [Doc. 82] at 5. Defendants argue that because "[t]he language quoted in the Report and Recommendation states that a police officer must have reasonable suspicion that a suspect is involved in criminal activity . . . the Magistrate Judge attempts to overrule *Whren v. United States*, 517 U.S. 806 (1996)." Def. Morales's Obj. to R & R [Doc. 82] at 5. "[T]he Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops." *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000). "In *Lopez-Soto*, [the Ninth Circuit Court of Appeals] considered and rejected the argument that *Whren* altered the standard for traffic stops from 'reasonable suspicion' to 'probable cause.' *See* 205 F.3d at 1104." *United States v. Choudhry*, 461 F.3d 1097, 1100 n.2 (9th Cir. 2006).

Defendants assert that because there was no criminal activity in this case, but rather "an equipment and an alleged lane change which are civil traffic offenses" the reasonable suspicion standard of *Lopez-Soto* does not apply. Def. Morales's Obj. to R & R [Doc. 82] at 5. Defendants contention is without merit. As an initial matter, in the Ninth Circuit *Whren* does not require something more than reasonable suspicion. *Choudhry*, 461 F.3d at 1100 n.2. In *Choudhry*, the Ninth Circuit contemplated the application of *Whren* "to parking violations under California's civil-administrative enforcement scheme[.]" *Choudhry*, 461 F.3d at 1101.

"Although the reasonable suspicion inquiry *does* center on suspected criminal activity, *Whren* carves out an exception in the context of traffic stops, i.e., a stop is 'reasonable' where an officer suspects an individual has committed a traffic violation." *Choudhry*, 461 F.3d at 1102 (emphasis in original) (internal citations omitted). "*Whren* is not limited to 'criminal' traffic code violations." *Id.* Accordingly, Magistrate Judge Guerin applied the correct legal standard.

Furthermore, the Government satisfies its "burden of production by coming forward with 'specific and articulable facts,' *Terry* [*v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] to support [an officer's] suspicion of illegal activity." *United States v. Willis*, 431 F.3d 709, 715 n.5 (9th Cir. 2005). Defendants have the burden of proof on a motion to suppress, and as such must "introduce contrary evidence or get the officer to retract his testimony on cross-examination." *Id.*

### B. *Reasonable Suspicion Regarding Slow Moving Vehicle*

Defendants argue that Magistrate Judge Guerin erred in finding that "officer Kroger [sic] had particularized and an objective basis from which to conclude that Defendant Morales was traveling at less than normal speed in the far left lane of I-10 in violation of A.R.S. § 28-721(b)[.]" Def. Morales's Obj. to R & R [Doc. 82] at 7. Defendants further assert that "any vehicle wishing to go around the Morales vehicle did so, <u>blocking her effort to go into the middle lane</u>." *Id.* at 6 (emphasis in original).

Section 28-721(B), Arizona Revised Statutes, provides:

> On all roadways, a person driving a vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall drive the vehicle in the right-hand lane then available for traffic or as close as practicable to the right-hand curb or edge of the roadway, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway.

Officer Kroeger testified that he observed "a black pickup truck in the left-hand lane traveling westbound. It appeared to be driving slower than – at that point even driving slower than the normal traffic rate." Hr'g Tr. 9/8/2011 [Doc. 74] at 9:7-12. There were "two

- 9 -

cars behind it – in close proximity behind it and at least two others passing it and from the center lane." *Id.* at 9:18-21. Officer Kroeger further testified that he paced the black pickup for one mile to milepost 245. *Id.* at 12:5-6. During that time, "[t]he vehicle stayed in the left-hand lane the whole time and then there continued to be cars that went around it from the center lane." *Id*. 12:6-8. The black pickup was traveling "at 60 to 65 miles per hour" during this one mile stretch. *Id.* at 12:3-4. The speed limit increased from 65 to 75 miles per hour just west of Cortaro Road. Hr'g Tr. 9/8/2011 [Doc. 74] 11:15-21. Although Officer Kroeger often paces vehicle for two or three-tenths of a mile, in this case he paced the black pickup for one mile to give it an opportunity to move to the right. *Id.* at 12:18-24; 92:4-11. Defendant Morales admitted that when Defendant Jakaub told her that a police officer was approaching the vehicle, Defendant Morales got nervous and slowed down. *Id.* at 75:22-76:10. Additionally, Officer Kroeger testified that in the area of milepost 252 and again at approximately milepost 250 there are ADOT signs admonishing slower traffic to move right. *Id.* at 8:16-9:1.

As the foregoing review demonstrates, the Government met its burden to demonstrate "specific, articulable facts" sufficient to support a finding of reasonable suspicion that Defendant Morales was committing a traffic violation. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Officer Kroeger observed cars passing the black pickup truck on the right, and paced the vehicle at below the posted speed limit. Officer Kroeger believed Defendant Morales to be in violation of A.R.S. § 28-721(B), and accordingly effectuated a traffic stop. Defendants did not meet their burden of proof to refute Officer Kroeger's testimony. Defense witness Charles Taylor provided a nearly identical definition of how to pace a vehicle, and his testimony did not undermine Officer Kroeger's description of the July 17, 2011 events. Defendants also urge that there is no fast lane on any roadway with three lanes traveling in one direction. Def. Morales's Obj. to R & R [Doc. 82] at 6. As noted previously, this contention is without merit. Officer Kroeger testified that the number 1 lane is also known as the fast lane. *Id.* at 18:17-21. This is consistent with the dictionary definition of a fast lane, and the ADOT signs instructing slower traffic to move

1 to the right. Accordingly, the Court finds that the totality of the circumstances supported by specific, articulable facts are sufficient to support a finding of reasonable suspicion by Officer Kroeger.

### C.     *Reasonable Suspicion Regarding Damaged Windshield*

Defendants assert that Magistrate Judge Guerin's finding that Officer Kroeger testified credibly regarding the cracked windshield is unsubstantiated by the record. Def. Morales's Obj. to R & R [Doc. 82] at 7. At the hearing Officer Kroeger also testified that while pacing the vehicle he noticed a "pretty significant crack on the passenger – right-hand side to the windshield . . . a very significant crack . . . really shattered." *Id.* at 13:18-25.  When presented with a photograph of the black pickup and its cracked windshield, Officer Kroeger averred that "[a]fter I stopped the vehicle, this is an accurate picture of how I saw it, yes." Hr'g Tr. 9/8/2011 14:11-14; Govt.'s Exh. "4." Defendants urge that Officer Kroeger's testimony regarding Government's Exhibit 4, means that Officer Kroeger could not have seen the crack until after he stopped the vehicle. A careful review of the transcript demonstrates that Officer Kroeger testified that he first saw the crack in the windshield while pacing the black pickup. *Id.* at 13:18-25. Officer Kroeger's testimony that the picture depicted the crack after he stopped the vehicle does not undermine this interpretation. Defendant further asserts that Officer Kroeger's sworn testimony is contradictory; however, as stated previously, the mixed verb tenses in Officer Kroeger's response does not support a determination of inconsistent testimony. As such, the Court finds that Officer Kroeger had reasonable suspicion to stop the black pickup on July 17, 2011 for a violation of A.R.S. § 28-957.01.

Accordingly, after an independent review of the pleadings, exhibits and transcript, IT IS HEREBY ORDERED that:

1.     The Report and Recommendation [Doc. 77] is ADOPTED;

2.     Defendant Jakaub's Motion to Join in Motion to Reconsider and Objection to Report and Recommendation [Doc. 84] is GRANTED;

3. Defendant Morales's Motion to Suppress [Doc. 44] is DENIED; and

4. The Clerk of the Court is directed to return all exhibits to counsel.

DATED this 21st day of November, 2011.

_____
Cindy K. Jorgenson
United States District Judge